UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| GLEN D.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:25-cv-195-MJD-RLY |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Claimant Glen D. requests judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 423(d).

For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

### I.  Background

Claimant applied for DIB in December 2019, alleging an onset of disability as of April

11, 2018.  [Dkt. 12-5 at 5.]  Claimant's application was denied initially and again upon

reconsideration, and a hearing was held before Administrative Law Judge Michael Scurry

("ALJ") on May 11, 2022.  [Dkt. 12-2 at 45.]  On June 1, 2022, ALJ Scurry issued his

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

determination that Claimant was not disabled.  *Id.* at 21.  After the Appeals Council denied Claimant's request for review, Claimant sought judicial review in this Court.  The Court remanded Claimant's claim to the Commissioner on February 15, 2024.  [Dkt. 12-9 at 42.]

A second hearing was held before ALJ Scurry on September 24, 2024.  [Dkt. 12-8 at 62.] The ALJ issued his second opinion on October 10, 2024, again determining Claimant was not disabled.  *Id.* at 12.  The Appeals Council denied Claimant's request for review on August 12, 2025.  *Id.* at 2.  Claimant then timely filed his Complaint on September 8, 2024, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis:  (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is

not disabled. 20 C.F.R. § 404.1520.  Before continuing to step four, the ALJ must assess the

claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's

limitations supported by the medical record."  *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)

(citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).  If, at any step, the ALJ can make a

conclusive finding that the claimant either is or is not disabled, then he need not progress to the

next step of the analysis.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR

§ 404.1520(a)(4)).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the

denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are
> supported by substantial evidence.  42 U.S.C. § 405(g); *Deborah M. [v. Saul*, 994
> F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000)
> (ALJ's residual functional capacity determination "must be supported by
> substantial evidence in the record").  Substantial evidence is "such relevant
> evidence as a reasonable mind might accept as adequate to support a conclusion."
> *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019),
> quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83
> L.Ed. 126 (1938).  While we do not reweigh evidence, we conduct a critical
> review because a decision "cannot stand if it lacks evidentiary support or an
> adequate discussion of the issues."  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,
> 539 (7th Cir. 2003).  In addition, an ALJ must "build an accurate and logical
> bridge from the evidence to [her] conclusion."  *Clifford*, 227 F.3d at 872.  That
> logical bridge can assure a reviewing court that the ALJ considered the important
> evidence and applied sound reasoning to it.  See *Hickman v. Apfel*, 187 F.3d 683,
> 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025).  This is the standard the Court will apply

in this case.

### III.  ALJ Decision

The ALJ first determined that Claimant did not engage in substantial gainful activity

between the alleged onset date of April 11, 2018, and his date last insured, June 30, 2021.  [Dkt.

3

12-8 at 15.]  At step two, the ALJ found that Claimant had the following severe impairments: "Meniere's disease; sensorineural hearing loss; osteoarthritis status post left total hiparthroplasty; and obesity."  *Id*.  At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period.  *Id.*  The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally push and/or pull with the left lower extremity; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can tolerate a moderate noise level as defined in Selected Characteristics of Occupations; and should avoid concentrated exposure to noise and hazards, such as unprotected heights.

*Id.* at 16.

At step four, the ALJ found that Claimant was able to perform his past relevant work as a President/CEO/Chairman during the relevant time period.  *Id*. at 30.  Accordingly, the ALJ concluded Claimant was not disabled.  *Id.*

### IV.  Discussion

Claimant argues that the ALJ's assessment of his subjective symptoms allegations is erroneous and constitutes reversible error.  For the reasons set forth below, the Court agrees.

When assessing a claimant's subjective symptoms, an ALJ must complete a two-step process.  First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."  SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3.  Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an

individual's ability to perform work-related activities." SSR 16-3p at *3. The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including, but not limited to, the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8.

Claimant's main health issue is Meniere's Disease, which he testified caused episodes of severe vertigo as well as dizziness and balance issues. Claimant testified at his first hearing that "post-2018, I probably would have been missing consistently a week to ten days a month" due to these symptoms. *Id.* at 74-75. At his second hearing, Claimant testified as follows:

```
Q  So looking back, would you agree that the 2018 to 2021
timeframe was really bad for you?
    A  2018 through most of 2020 was really bad.  2021, I was
having the dizziness and balance issues, mild vertigo, but nausea
was gone in 2021.
    Q  Okay.  And at the last hearing, I asked you whether you
would have to frequently miss work between April of 2018 and then
your Social Security for retirement date is in July of 2021.  Do
you think that during that time period, you would have been able to
work without missing more than two or three days per month of work?
    A  Truthfully, the way I was in '18 and '19, my company would
have terminated me had I continued to work because in our industry,
the leader doesn't miss two or three days a month, and that doesn't
happen.  I would have been missing probably in excess of five or
six days a month.
```

5

```
Q  In fact, last hearing you testified from April '18 to July
'21, you think on average, you'd have to miss seven to ten days of
work per month.  Does that seem accurate?
    A  In the early '18, '19, '20, that would be accurate.
Afterwards, I think I would have probably missed, you know, less
than that because of dizziness and balance.
```

[Dkt. 12-8 at 79.]  The vocational expert at that hearing testified that missing work "several days per month" would be work preclusive, as would the need for unscheduled breaks and absences "at will on an unpredictable basis." *Id.* at 75, 76.  Thus, if Claimant's testimony regarding his subjective symptoms were credited, a finding of disability would have been required.

The ALJ did not fully credit Claimant's subjective symptoms allegations, however. Instead, he concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Dkt. 12-8 at 18.]

The ALJ first thoroughly reviewed the medical evidence of record and concluded that it, along with claimant's treatment history, was "only somewhat consistent with the degree of subjective allegations alleged." *Id.*  The ALJ explained this finding as follows:

> To summarize, the claimant did have multiple impairments affecting his left ear. His Meniere's Disease was controlled by his diet until April 2018 per his testimony and the medical records when he experienced worsening of the condition.  However, in June, he acknowledged having no more than 4 attacks since April and that only two were severe.  As such, they appeared to occur with less frequency than the claimant testified.  He also noted not all the attacks had nausea and vomiting and in December 2018 had actually noted he had no episodes with nausea or vomiting since his prior visit in September.  Thereafter, he continued to report no nausea and vomiting, so the medical records demonstrate

6

that this particular symptoms [sic], which the claimant alleged as one of the most limiting at hearing, did not persist for even a 12 month [sic].

The claimant had the first Labyrinthectomy in December 2018, and this procedure led to further improvement. Initially, his vertigo had resolved, though he had ongoing fullness and tinnitus. Then, he had a couple mild episodes of vertigo in September 2019 and then, he reported in March 2020, he had severe episode [sic] of vertigo intermittently with ongoing tinnitus, fullness, and pressure as well as a few episodes of dizziness. He had another Labyrinthectomy that month and he later reported that though he had some balance issues after the procedure, his vertigo had resolved. He also noted a decrease in his tinnitus, though he had some ongoing fullness. Ultimately, with additional therapy, exercises, walking, and adherence to his diet, the claimant improved further until in March 2020 he noted only some imbalance/lightheadedness and in January 2021 reported his Meniere's was pretty good. As such, though his symptoms recurred in late 2019, they did not return with same intensities [sic] and the vertigo was eliminated as a symptoms [sic] in May 2020, though the claimant did have some imbalance thereafter even that improved within 6 months of it occurring. . . .

As such, though the claimant experienced symptoms, they were generally episodic and responded to treatment many resolving for months at a time. The treatment did sometimes trigger new symptoms, but those similarly responded to treatment. The record overall demonstrated the claimant improved in degrees from December 2018 through the time of his hearing.

[Dkt. 12-8 at 23-24.]

The problem is that the ALJ failed to recognize that Claimant's symptoms could be disabling even if they were episodic rather than continuous. The question is whether Claimant's symptoms, although episodic, occurred with enough frequency and severity for at least a twelve-month period to preclude Claimant from holding down a full-time job. The ALJ does not explain in his decision how many days per month he believes Claimant would have missed work during the relevant time period due to his subjective symptoms and did not elicit any specific

testimony from the vocational expert to determine whether that number of absences would preclude work.[2]

Although it is not clear, it appears that the ALJ might have believed that the only symptoms severe enough to make Claimant miss work were vertigo attacks accompanied by nausea and vomiting.  If so, the ALJ fails to explain how he believes Claimant could perform his past relevant work as a President/CEO/Chairman while experiencing the periodic spells of dizziness and the balance issues reflected in the medical records.  Or perhaps the ALJ believed that Claimant's complaints to his doctors about his other symptoms were also exaggerated and that those symptoms did not actually occur frequently enough to preclude work.  The fact that the Court is left to guess at the ALJ's reasoning with regard to Claimant's subjective symptoms allegations makes it clear that remand is required.  To so hold is not, as the Commissioner argues, to reweigh the evidence; it is to hold the ALJ to his duty to issue an opinion that "'build[s] an accurate and logical bridge' from the evidence to its conclusion."  *Swiecichowski v.*

---

[2] Indeed, no testimony was given by a vocational expert at the second hearing, although one was present.  The Court notes that vocational experts have testified in other cases that "more than eight absences in a year was work-preclusive," *Rabdeau v. Bisignano*, 155 F.4th 908, 912 (7th Cir. 2025); that "if a person were regularly absent, tardy, or leaving early for two or more days a month, that person would 'lose their employment,'" *Moy*, 142 F.4th at 556; that "absenteeism should not exceed two days per month," *McCorkle v. Kijakazi*, No. 22-1638, 2023 WL 179983, at *2 (7th Cir. Jan. 13, 2023); that "two absences per month (on average) would preclude even these jobs," *Martin v. Kijakazi*, No. 21-1920, 2022 WL 1681656, at *2 (7th Cir. May 26, 2022); and that only "one absence per month . . . would be tolerated by employers," *Heather K. v. Bisignano*, No. 1:25-CV-396-RLY-MJD, 2025 WL 3644347, at *3 (S.D. Ind. Nov. 26, 2025), *report and recommendation adopted sub nom. Heather S. K. v. Bisignano*, No. 1:25-CV-00396-RLY-MJD, 2025 WL 3642011 (S.D. Ind. Dec. 16, 2025).  The record in this case does not indicate whether the tolerance would be different for Claimant's past relevant work as a President/CEO/Chairman.

*Dudek*, 133 F.4th 751, 756 (7th Cir. 2025) (quoting *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

Two other aspects of the ALJ's decision merit mention in order to avoid repeated error on remand.  First, Claimant testified that he had to stop riding his motorcycle because of balance issues and that he sold his traditional motorcycle and purchased a three-wheel motorcycle because "it was stable . . . I didn't worry about balancing, falling over." [Dkt. 12-8 at 77.]  The ALJ apparently found this to be not credible, opining:  "The undersigned notes that a three wheeled motorcycle is still, by definition, a motorcycle.  Further, if one is incapable or [sic] riding a motorcycle, a person does not buy another, different model." [Dkt. 12-8 at 23.]  This statement is, quite frankly, bizarre.  Obviously, the entire point of adding a third wheel to a motorcycle is to eliminate the need to balance on two wheels; a three-wheel motorcycle is a fundamentally different vehicle from a two-wheel motorcycle, just as a toddler's tricycle is fundamentally different from a bicycle.

In addition, the Court notes that the ALJ includes the following in his decision:

> The undersigned also notes, the claimant has not actually had more than his annual appointments since May 2021. Although the claimant had contact with his ENT specialist to get his past medical record changed in July 2024, at that time, he made no complaints. There is no evidence he scheduled any future appointments. The undersigned notes that the claimant indicated his medical record was correct other than the golfing and motorcycle riding, which he had disputed (see above). Accordingly, it was clear, the claimant himself agreed that many of his symptoms had resolved with appropriate treatment. Further, the claimant's symptoms appeared to be mostly adequately controlled with his medications as since May 2021 and the time of his call in July 2024, the claimant had only a single appointment at which no changes or complaints were made. As such, this impairments [sic] had improved with treatment to the point he was no longer seeking additional treatment other than his medication.

[Dkt. 12-8 at 24.]   As Claimant notes, he became eligible for his full Social Security retirement in July 2021; thus, the relevance of improvement in Claimant's condition after that date is not

readily apparent and should be explained by the ALJ if it is relied up on in reaching his conclusion.

### V.  Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED AND REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  25 JUN 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.